UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

DMT S.A.,

        Plaintiff,

        v.                                                Case No. 06-C-1191

ENERCON INDUSTRIES CORPORATION,

        Defendant.

---

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #66) AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM (DOC. #82)

        This contract dispute was initiated in the Northern District of Illinois and transferred to this court on November 16, 2006. The plaintiff, DMT S.A. (DMT), a French corporation, entered an agreement with the defendant, Enercon Industries Corporation (Enercon), a Wisconsin company, for the manufacture of two corona treating stations for use by DMT's customers in China. The defendant completed the stations, referred to as the LI-229 project and the WF-222 project, and delivered them to the plaintiff. The plaintiff sent the LI-229 equipment to its customer in China and the WF-222 equipment to a customer in Iran. Both stations failed.

        DMT brought this action alleging breach of contract, quasi-contract, and tort theories against Enercon for the failure of the LI-229 station in China and Enercon's refusal to repair. Enercon answered the complaint regarding the LI-229 station and counterclaimed for declaratory judgment that it owes no obligation to DMT with regard to the WF-222 station.

Now before the court are DMT's motion for partial summary judgment and Enercon's motion for summary judgment on its counterclaim.[1]

SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

---

[1] This case has morphed into two lawsuits, with DMT filing a similar action on July 17, 2007, against Enercon related to the failure and subsequent refusal to remedy the WF-222 equipment. That case, No. 07-C-656 (E.D. Wis.), has been transferred to this court. On August 27, 2007, Enercon filed identical motions in both cases: the instant Motion for Summary Judgment on its Counterclaim, and a Motion to Dismiss Pursuant to 12(b)(6) or in the Alternative Motion for Summary Judgment in Case No. 07-C-656. Enercon's motions in both cases present the same argument: Enercon has no obligation regarding the WF-222 project because DMT's transfer of that project to Iran violated U.S. export laws and made the parties' agreement illegal.

The parties have submitted briefs and supporting materials applicable to both cases. For example, Enercon filed one "Brief in Support of its Motion for Summary Judgment (Case No. 06-C-1191) and in Support of its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or in the Alternative for Summary Judgment (Case. No. 07-C-656)," along with one set of Proposed Findings of Fact. The brief in support is docketed as #83 in 06-C-1191 and #5 in 07-C-656, and the proposed findings of fact document is docketed as #84 in 06-C-1191 and #6 in 07-C-656. DMT filed one "Response to Defendant's Motion to Dismiss" in Case No. 07-C-656, and no response to Enercon's proposed findings of fact. DMT's response brief appears only as Doc. #12 in 07-C-656. However, because the issues and facts are identical in both of Enercon's motions, and Enercon submitted reply briefs in both cases, the court will assume DMT's response brief (Doc. #12 in 07-C-656) applies to Enercon's Motion for Summary Judgment on its Counterclaim (Case No. 06-C-1191) also.

2

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

BACKGROUND[2]

DMT is a French corporation with its principal place of business in France. (Compl. ¶ 4.) It is an engineering and consulting company specializing in sectors of raw materials exploration, product testing, building safety, construction, infrastructure, measuring technology, power supplies and electrode assemblies. (Compl. ¶ 3.) Enercon, a Wisconsin corporation with its principal place of business in Menomonee Falls, Wisconsin, manufacturers and delivers power supplies and electrode assemblies. (Compl. ¶¶ 5-6.)

On August 5, 2003, DMT and Enercon entered a contract (hereinafter "contract" or "agreement") whereby DMT agreed to purchase from Enercon certain corona treatment equipment. A corona treater is used by paper, plastic, foil and film converters to increase the surface tension of their materials to make them easier to print on or to laminate other

---

[2] DMT submitted Proposed Findings of Fact in support of its Motion for Partial Summary Judgment (Doc. #67), to which Enercon responded and submitted Additional Proposed Findings of Fact (Doc. #72). Enercon then submitted Proposed Findings of Fact in support of its Motion for Summary Judgment on its Counterclaim (Doc. #84). DMT refused to respond to Enercon's Proposed Findings of Fact. As such, to the extent that Enercon's proposed facts comply with Civil L.R. 56.2 and do not conflict with DMT's Proposed Findings of Fact in Support of its Motion for Partial Summary Judgment, they will be considered undisputed.

3

products.  (First Decl. Morgan ¶ 3.[3])  In corona treating, packaging materials are passed through an electrical discharge known as a "corona," which is essentially an ionized air gap created between a high-voltage, high frequency charged electrode and a metal roll across which a film (sheet plastic) passes.  (*Id*.)

The agreement between the parties covered three corona treatment projects, two of which are at issue: the WF-222 project and the IL-229 project.  (Compl. Ex. 1.)  China was listed as the location for each project on the August 5, 2003, summary of the agreement ("Agreement Summary").  (*Id*.)  The Agreement Summary provided that "the equipment is warranted for 12 months after start-up."  (Compl. Ex. 1.)  The associated purchase orders for each project, made part of the agreement, further warranted the equipment for "12 months in material and workmanship from the date of start-up, maximum 24 months from the date of delivery."  (Compl. Ex. 2; Second Decl. Morgan Ex. 3; Def.'s Resp. to Pl.'s Mot. to Dismiss ¶ 3.)

On October 29, 2003, DMT's shipping agent picked up the LI-229 equipment from Enercon.  (Compl. ¶ 11.)  The LI-229 equipment was then shipped by DMT to its customer in China.  (Compl. ¶ 12.)  Within twelve months of delivery, the LI-229 equipment started to fail.  According to DMT, the corona stations' electrodes became damaged, film would come off the equipment in an uncontrollable manner, surface treatment was not uniform, movement was slow, and condensation developed.  DMT contacted Enercon with a demand that Enercon cure what DMT considered defects in the equipment.  (Compl. ¶ 14.)

---

[3] Enercon submitted two declarations of Walter Morgan in this case.  The first declaration (First Decl. Morgan) is attached to Enercon's Response to Plaintiff's Proposed Findings of Fact and Additional Facts (Doc. #72-2).  The second declaration (Second Decl. Morgan) accompanies Enercon's Motion for Summary Judgment on its Counterclaim (Doc. #85) (which is also filed as Doc. # 7 in Case. No. 07-C-656).

4

As for the WF-222 equipment, DMT accepted delivery of that order on August 29, 2003, in Menomonee Falls, Wisconsin. (Second Decl. Morgan ¶ 10.) In October 2003, Enercon learned for the first time that, contrary to the indications on the Agreement Summary and other documents, DMT had shipped WF-222 equipment to Iran rather than to China. (*Id.* ¶ 11.) On October 22, 2003, Enercon advised the U.S. Department of the Treasury that DMT had, without Enercon's prior knowledge or consent, shipped the WF-222 equipment to Iran. (*Id.* ¶ 12.) Enercon then advised DMT by letter on October 29, 2003, and by email on October 30, 2003, that shipment of the WF-222 equipment to Iran was in violation of U.S. Export Controls and that Enercon would provide no spare parts, technical assistance, or support for any of the WF-222 equipment. (*Id.* ¶ 13.)

On February 2, 2004, Enercon's outside counsel was faxed an Administrative Subpoena from the U.S. Department of Commerce relating to DMT's shipment of the WF-222 equipment to Iran. (*Id.* ¶ 14). As a result of continuing communications during 2004 between Enercon and the U.S. Treasury Department, Enercon was instructed not to transact any further direct business with DMT. (*Id.* ¶ 15). On December 22, 2004, Enercon's President, Greg Schuelke, notified DMT that Enercon would no longer do any direct business with DMT. (*Id.*)

On August 10, 2006, DMT brought suit against Enercon in U.S. District Court for the Northern District of Illinois. The case was transferred to this court on November 16, 2006, based on the stipulation of the parties.[4] In its Complaint, DMT asserts seven causes of action based on breach of contract, quasi-contract, and tort theories related to the

---

[4] Since the case was transferred, this court has ruled on the following contested motions: Enercon's motion to dismiss certain claims, DMT's motion to dismiss Enercon's counterclaim, DMT's motion to strike Enercon's affirmative defenses, and Enercon's motion for leave to file an Amended Answer and Counterclaim.

performance of the LI-229 project. Enercon filed a counterclaim seeking declaratory judgment that it owes no obligation to DMT with regard to the WF-222 station. The matter of the WF-222 station has since spun off into another suit, Case No. 07-C-656, which is also pending before the court.

Now before the court are DMT's Motion for Partial Summary Judgment as to Liability under Counts I, II, III, and IV; and Enercon's Motion for Summary Judgment on its Counterclaim.

DISCUSSION

I. DMT's Motion for Summary Judgment

DMT moves for summary judgment as to its claims for (1) breach of contract (Count I); (2) breach of express warranty (Count II); (3) breach of implied warranty of merchantability (Count III); and (4) breach of implied warranty of fitness for a particular purpose (Count IV). The parties agree that in this diversity case, Wisconsin law governs substantive issues. (*See* Pl.'s Br. in Supp. of Mot. for Partial Summ. J. 5; Am. Ans. 3; Def.'s Resp. to Pl.'s Mot. for Summ. J. 7.)[5] However, no substantial recitation of Wisconsin contract law is needed here, as the factual disputes between the parties reveal obstacles to summary judgment.

DMT's position is straightforward and fact intensive. It asserts that the Agreement Summary and the Purchase Order for the LI-229 equipment expressly state that the equipment is under warranty for 12 months from start-up. As noted, the Agreement

---

[5] Enercon's Answer and Amended Answer point out that the Complaint asserts provisions of Illinois law under Counts II, III, and IV. (Compl. ¶¶ 23, 30-33, 41-44.) The Answer and Amended Answer reference Illinois' enactment of the Uniform Commercial Code and "assume[] that the references to the Uniform Commercial Code (the 'UCC') as enacted in Illinois should be read to mean the comparable sections of the UCC as enacted in Wisconsin as Illinois bears no meaningful relationship to the matters at issue." (Am. Compl. 3.) No Amended Complaint has been filed, but the parties refer to Wisconsin law in all relevant briefs.

6

Summary provides that "the equipment is warranted for 12 months after start-up," and the Purchase Order for the LI-229 project states that it is warranted for "12 months in material and workmanship from the date of start-up, maximum 24 months from the date of delivery." There is no dispute that the LI-229 equipment was so warranted,[6] and there is no dispute that the equipment failed within the first 12 months of start-up. Further, for the purposes of this motion, it is undisputed that the equipment may have failed in the following manner:

> the Corona Stations' Electrodes were not strong enough on both sides and damaged very quickly. The Corona Stations' film would come off in an uncontrollable manner during film break. The surface treatment was not uniform over the width. The movement of the Corona Station's Electrodes was to [sic] slow. The Corona Stations' holders were burnt because of electrical short cuts from the Electrodes. The Electrodes could not handle the condensation. The condensation had a negative impact on the film quality during the production process. Furthermore the Electrodes had to be cleaned every 3 to 4 days. . . . Condensation would come out of the flaps and the large hole to negatively affect the film quality. It was impossible to clean the large pipe over the Electrodes because the tube was closed on both sides.

(Def.'s Proposed Findings of Fact ¶ 11.) Therefore, according to DMT, Enercon's refusal to remedy the equipment problem after timely notification was a breach of the parties' contract and breach of an express warranty.

DMT further claims that Enercon breached an implied warranty of merchantability, Wis. Stat. § 402.314, and an implied warranty of fitness for a particular purpose, Wis. Stat. § 402.315. Wisconsin Statutes section 402.314 provides that "Unless excluded or modified (§ 402.316), a warranty that the goods shall be merchantable is implied

---

[6] DMT never claims that the limitation on the warranty to "materials or workmanship" stated in the Purchase Order is inapplicable. It merely repeats that both the Agreement Summary and the Purchase Order form the warranty covering the LI-229 project. Therefore, with no claim to the contrary, and with the nonmovant Enercon asserting, inter alia, that the warranty must be interpreted consistent with the Purchase Order, the warranty is considered limited to materials and workmanship.

in a contract for their sale if the seller is a merchant with respect to goods of that kind." This means that the goods "[a]re fit for the ordinary purposes for which such goods are used. § 402.314(2)(c); *see also* 18 *Williston on Contracts* § 52:76 (4th ed.) (noting that "breach of warranty [of merchantability] will readily be found under this standard where the goods are so obviously defective that they are not suitable for any of their ordinary uses, or at least for their principal use."). As for fitness for a particular purpose, section 402.315 provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under § 402.316 an implied warranty that the goods shall be fit for such purpose.

DMT asserts that it relied on Enercon to manufacture suitable corona treatment equipment, and that the equipment would be fit for use by the end user, who was known to all parties as Quanzhou Lichang Plastic Co. Ltd. of China. As such, Enercon, according to DMT, violated these implied warranties.[7]

According to Enercon, however, DMT's arguments ignore key disputed facts. To this end, Enercon asserts that (1) the agreement was comprised of additional documents, two of which further define and limit the applicable warranty, and (2) the equipment failure was due to factors not covered by the warranty.

To start, Enercon maintains that in addition to the Agreement Summary and the Purchase Order, other relevant documents make up the contract between the parties as to the sale and purchase of the LI-229 equipment. While it is undisputed that the Purchase

---

[7] DMT's argument as to how Enercon violated an implied warranty of merchantability is confusing. While it sets forth a separate section for that claim, the elements and argument presented in its brief appear to be based on breach of an implied warranty of fitness for a particular purpose. Unfortunately, outside of passing reference to the applicable Wisconsin statute, DMT fails to provide any authority for the breach of implied warranty argument, including where the cited elements are found.

8

Order covered defects due to "materials and workmanship," Enercon points to documents titled "Enercon's Exclusive Warranty and Remedies" ("Exclusive Warranty"), and "Terms and Conditions of Sale" ("Terms and Conditions"), as applicable to the LI-229 purchase. (First Decl. Morgan ¶ 4, Exs. A, B.) The Exclusive Warranty provides in relevant part as follows:

> Enercon warrants the equipment sold pursuant to any order to be free from defects in material and workmanship and to perform within the limits set forth in the written proposal for a period of one (1) year from the date of equipment startup. . . . THIS WARRANTY IS EXCLUSIVE AND IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. . . .
> . . . . Enercon accepts no responsibility for damage resulting from improper handling or use of equipment installation, operation, installation of unauthorized factory parts, negligence or improper repair. . . .

(First Decl. Morgan ¶ 3 & Ex. A.) Similar language is included in the Terms and Conditions:

> Exclusive Warranty. Seller warrants the Articles sold pursuant to Seller's Written Proposal to be free from defects in material and workmanship and to perform within the limits set forth in Seller's Written Proposal for a period of one (1) year from the date of Article startup. . . . THIS WARRANTY IS EXCLUSIVE AND IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(First Decl. Morgan ¶ 3 & Ex. B.)[8]

Second, and relatedly, Enercon asserts that the failure of the LI-229 project must be due to the specifications DMT provided to Enercon. It further contends that it was

---

[8] DMT maintains that the Express Warranty and the Terms and Conditions documents are not part of the agreement between the parties. It points out that neither document is signed by DMT and there are no references to these documents in the Agreement Summary or Purchase Order. (Pl.'s Reply Br. 6-7.) However, Enercon has submitted the sworn declaration of Walter Morgan on this matter consistent with Rule 56(e) and 28 U.S.C. § 1746. Hence, in the absence of any contrary showing, the court must assume all facts and reasonable inferences in favor of the nonmovant. In any event, even if these documents were not part of the agreement, summary judgment is still barred due to questions of fact regarding the cause of the LI-229's failure.

9

not informed that the LI-229 would be operating under extreme, high humidity conditions, and DMT never inquired whether the equipment would work under such conditions. Condensation caused by the high humidity environment, problems in the production line, power outages, and related problems were the cause of LI-229's failure, according to Enercon. (First Decl. Morgan ¶ 9.) Thus, Enercon contends that whatever problems occurred with the LI-229 equipment, they were not the result of defective materials or workmanship—which was all the express warranty covered.

DMT replies that regardless of any specifications it supplied to Enercon, Enercon warranted the equipment for twelve months. Further, Enercon was aware of the destination of the product and ultimate customer, and never mentioned that any thing may be faulty under the circumstances.

With regard to the breach of contract claim, DMT cannot succeed on summary judgment because it cannot demonstrate that there is no dispute of material fact that the LI-229 equipment failed due to defects in materials and workmanship covered by the warranty. The court is presented with competing affidavits as to what caused the LI-229 to malfunction—improper application or operation of the equipment, or faulty materials and workmanship, with only the latter being covered by warranty. Hence, summary judgment on this point is precluded.

For the same reasons, summary judgment is precluded on DMT's Breach of Express Warranty claim. The express warranty claim covers defects in materials and workmanship but not failure due to improper operation or application. Thus, competing facts as to the cause of failure in the LI-229 project make summary judgment inappropriate.

Summary judgment is also precluded with respect to DMT's breach of implied warranty claims as (1) the dispute over what caused the LI-229 to fail represents a genuine issue of material fact, and (2) the Express Warranty and Terms and Conditions documents exclude such warranties. First, an implied warranty of merchantability will not be breached in the absence of an inherent defect, and an implied warranty of fitness for a particular purpose will not be breached if failure is due to improper application. Issues of material fact are apparent with regard to these matters. Second, under Wisconsin law, an implied warranty of merchantability and an implied warranty of fitness for a particular purpose may be excluded from an agreement by express waiver:

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof.

Wis. Stat. § 402.316(2). The Express Warranty and the Terms and Conditions, which according to Enercon are part of the agreement between it and DMT with regard to the LI-229 project, provide, in capital letters "THIS WARRANTY IS EXCLUSIVE AND IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (First Decl. Morgan ¶ 3, Exs. A, B.) While there is no dispute that this language satisfies the requirements of § 402.316(2), DMT disputes that the Express Warranty and Terms and Conditions are part of its agreement.[9]

---

[9] In presenting its arguments regarding breach of implied warranties, DMT repeatedly use the phrase "It is undisputed . . ." For example, it states "It is undisputed that Enercon breached the implied Warranty of Merchantability," and "It is undisputed that Enercon breached the implied warranties of fitness for a particular

11

Because genuine issues of material fact exist as to the cause of failure in the LI-229 equipment and the extent of Enercon's obligation to DMT under the warranty provisions of the agreement, DMT's motion for partial summary judgment as to Counts I, II, III, and IV, is denied.

## II. Enercon's Motion for Summary Judgment

For the reasons set forth in this court's order granting Enercon's Motion to Dismiss pursuant to Rule 12(b)(6) or in the Alternative for Summary Judgment in Case No. 07-C-656, Enercon's motion for summary judgment on its counterclaim is granted.[10]

Now, therefore

IT IS ORDERED that DMT's Motion for Partial Summary Judgment (Doc. # 66) is denied.

IT IS FURTHER ORDERED that Enercon's Motion for Summary Judgment on its Counterclaim (Doc. # 82) is granted.

Dated at Milwaukee, Wisconsin, this 24th day of April, 2008.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE

---

purpose." (Pl.'s Mot. for Summ. J. 8, 10.) While certainly forceful, DMT's representations are amusing in that if we replace the phrase "It is undisputed" with "it is vigorously disputed," they become true.

[10] See footnote 1 for a description of the relationship between this case and Case No. 07-C-656.